UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWNA CAPOLUPO BROOKS,<br>*Plaintiff*,<br><br>v.<br><br>TIMOTHY O'BRIEN, ET AL.<br>*Defendants*. | No. 3:21-cv-1688 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Shawna Capolupo Brooks ("Plaintiff") has sued Timothy O'Brien, Conor Hogan, Michael Campisano, David Wallace, the City of Bristol, and Ellen Zoppo-Sassu (collectively, "Defendants") for their alleged failure to properly investigate her domestic violence complaint. Compl., ECF No. 1 (Dec. 20, 2021) ("Compl."). Ms. Capolupo Brooks advances four claims: (1) failure to investigate and denial of equal protection under 42 U.S.C. § 1983, (2) *Monell* claims for failure to train and supervise under 42 U.S.C. § 1983, (3) negligent infliction of emotional distress, and (4) negligence. *Id.*

Defendants have moved for summary judgment as to all of Ms. Capolupo Brooks's claims. Mot. for Summ. J., ECF No. 36 (Oct. 18, 2023) ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part.**

Summary judgment is granted on Counts One and Two, Plaintiff's Section 1983 claims. The Court dismisses Counts Three and Four, the state law negligence claims, without prejudice to their refiling in state court.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   <u>Factual Background</u>

      1.   *The Parties*

On August 24, 2021, Shawna Capolupo Brooks lived at 45 North Main Street, Apartment K, in Bristol, CT, and had been living there for over two years. Defs.' Local Rule 56(a)(1) Statement ¶ 62, ECF No. 36-2 (Oct. 18, 2023) ("Defs. SMF"); Local Rule 56(a)(2) Statement of Pl. in Opp'n to Summ. J. ¶ 62, ECF No. 42 (Dec. 28, 2023) ("Pl. SMF"). She lived in a studio apartment located on the second floor of the building, Defs. SMF ¶ 63; Pl. SMF ¶ 63, one accessible by key only—there were no buzzers or intercom systems. Defs. SMF ¶ 64; Pl. SMF ¶ 63.

On August 24, 2021, Timothy O'Brien, Conor Hogan, and Michael Campisano were officers with the Bristol Police Department ("BPD"). Defs. SMF ¶ 1; Pl. SMF ¶ 1.

Timothy O'Brien was a Sergeant with the BPD, and he was the supervisor on shift on the evening of August 24, 2021. Aff. of Sgt. Timothy O'Brien ¶¶ 3–4, Ex. D. to Defs.' Mot. for Summ. J., ECF No. 36-6 (Oct. 18, 2023).

On August 24, 2021, David Wallace worked as a dispatcher with the City of Bristol. Defs. SMF ¶ 2; Pl. SMF ¶ 2.

Ellen Zappo Sassu served as the Mayor of the City of Bristol from 2017 through 2021. Defs. SMF ¶ 38; Pl. SMF ¶ 38.

      2.   *The Events of August 24, 2021*

On August 24, 2021, at approximately 2:30 a.m., a male known to Ms. Capolupo Brooks arrived at her residence and she let him in. Defs. SMF ¶ 3; Pl. SMF ¶ 3.

Ms. Capolupo Brooks and the man were "casually romantic," and she had known him for a couple of months before the incident. Defs. SMF ¶¶ 85, 87; Pl. SMF ¶¶ 85, 87. On the night of

the incident, she had seen him in person five times, and he had never been physical with her before. Defs. SMF ¶¶ 85, 90; Pl. SMF ¶¶ 85, 90.

Within five minutes of him entering her apartment, the two began to argue over his drunkenness and he started to assault her. Defs. SMF ¶¶ 77–78; Pl. SMF ¶¶ 77–78.

Ms. Capolupo went into the bathroom, the only enclosed space in the apartment, in order to escape from him. Defs. SMF ¶¶ 75–76; Pl. SMF ¶¶ 75–76.

At some point, after he started hitting her, Ms. Capolupo-Brooks called 911. Defs. SMF ¶ 66; Pl. SMF ¶ 66.

Later, after eight to ten minutes had passed without the police arriving, Ms. Capolupo Brooks called 911 again. Defs. SMF ¶¶ 76, 79; Pl. SMF ¶¶ 76, 79. On that call, she was "distraught" and "yelling" requested that the male be removed by the police. Defs. SMF ¶ 72; Pl. SMF ¶¶ 24, 72.

While she was on the phone with 911, the man broke down the bathroom door and took her phone. Defs. SMF ¶¶ 66, 74, 80; Pl. SMF ¶¶ 66, 74, 80.

Ms. Capolupo Brooks then called the non-emergency police line, which nobody answered. Defs. SMF ¶ 81; Pl. SMF ¶ 81.

The man eventually left after 46 minutes. Defs. SMF ¶ 96; Pl. SMF ¶ 96.

After she heard him leave, Ms. Capolupo Brooks stayed in the bathroom for ten minutes, and stayed in her apartment until she had to leave for an appointment at 1:00 p.m. Defs. SMF ¶ 101; Pl. SMF ¶ 101.

As a result of the assault, Ms. Capolupo Brooks's mouth nose, and eyes were "busted." Defs. SMF ¶ 106; Pl. SMF ¶ 106. Her "teeth went through [her] lip[,]" which was split and bleeding. Defs. SMF ¶ 108; Pl. SMF ¶ 108. She had bruises on her arms, legs, and sides, and her eyes were red and bloody. Defs. SMF ¶¶ 109–110; Pl. SMF ¶¶ 109–110. Two of her fingernails

were ripped off during the assault, and her hair was pulled out. Defs. SMF ¶¶ 111–12; Pl. SMF ¶¶ 111–112.

Ms. Capolupo Brooks did not seek medical treatment for her injuries. Defs. SMF ¶ 115; Pl. SMF ¶ 115. She is making claims based only on her emotional, not physical, injuries. *Id.*

### 3. *The Police Response*

On August 24, 2021, at approximately 2:49 a.m., Dispatcher Wallace received a 911 call from a female complainant who gave an address of 45 North Main Street and then disconnected the call. Defs. SMF ¶ 4; Pl. SMF ¶ 4.

Dispatcher Wallace called the complainant back at 2:50 a.m., and he was able to obtain clarification that she was located in Unit K of 45 North Main Street. Defs. SMF ¶ 5; Pl. SMF ¶ 5. The call was disconnected again. *Id.*

Dispatcher Wallace attempted to call the complainant back twice. Defs. SMF ¶ 6; Pl. SMF ¶ 6. The first call went to voicemail and the second call rang repeatedly. *Id.*

While on the phone with the complainant, Dispatcher Wallace heard arguing between the complainant and a male individual. Defs. SMF ¶ 7; Pl. SMF ¶ 7.

At 2:50 a.m., Dispatcher Wallace logged the call as follows: "CALLER GAVE ADDRESS AND HUNG UP. ON CB MALE FEMAL [sic] ARGUING[.]" Defs. SMF ¶ 8; Pl. SMF ¶ 8.

Police units were immediately sent to 45 North Main Street. Defs. SMF ¶ 9.

On August 24, 2021, at 2:51 a.m., Officers Campisano and Hogan were dispatched to conduct a wellbeing check at 45 North Main Street, Apartment K. Defs. SMF ¶ 12.[1]

---

[1] Plaintiff denies this statement but has not clarified which part(s) she considers untrue. The exhibit cited in support of her denial does not contradict this statement of fact. Accordingly, the Court deems it admitted. *See Malick v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-00669 (VLB), 2015 WL 5797008, at *1 n.1 (D. Conn. Sept. 30, 2015) ("Where a party asserts a fact and the opposing party either fails to deny the assertion or, in issuing a denial, the

Officer Campisano arrived at 45 North Main Street at approximately 2:52 a.m. Defs. SMF ¶ 13; Pl. SMF ¶ 13. Officer Hogan arrived at approximately 2:54 a.m. Defs. SMF ¶ 14; Pl. SMF ¶ 14.

Upon their arrival on the scene, both officers checked the common entry ground level door and found it to be locked. Defs. SMF ¶ 16; Pl. SMF ¶ 16. The officers attempted to locate an alternative entrance, an open window, or a doorbell or buzzer, but found none. Defs. SMF ¶¶ 17–19; Pl. SMF ¶¶ 17–19.

The officers walked around the building and identified that no lights were on and there were no relevant noises coming from the building. Defs. SMF ¶¶ 20–21; Pl. SMF ¶¶ 20–21.

Officer Hogan contacted dispatch and asked if there was a keycode that would allow him to access the building, but he was told that they did not have a code for the building. Defs. SMF ¶ 23; Pl. SMF ¶ 23.

Officer Campisano asked dispatch to attempt to make contact with the complainant. Dispatch advised him that they had called back and heard a male and female arguing. Defs. SMF ¶ 24; Pl. SMF ¶ 24.

Based on their investigation, neither Officer Campisano nor Officer Hogan believed that exigency existed that would warrant a forced entry into the locked building. Defs. SMF ¶ 25; Pl. SMF ¶ 25.

Officer Campisano called his supervisor, Sergeant O'Brien, and reported the results of his investigation. Defs. SMF ¶ 27; Pl. SMF ¶ 27. Sergeant O'Brien had also heard the initial dispatch to a wellbeing check. Defs. SMF ¶ 31; Pl. SMF ¶ 31. Sergeant O'Brien determined that

---

party does not cite to evidence disputing its accuracy, the Court deems such fact admitted."); *see also* D. Conn. L.R. Civ. P. 56(a)(1) ("Each material fact set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]").

based on the circumstances, there was no exigency that would justify entry into the apartment. Defs. SMF ¶ 32; Pl. SMF ¶ 32.

Officer Campisano cleared the call and entered a note at 3:01 a.m., which stated: "No history at Unit K, locked and secure building. No buzzer to get in." Defs. SMF ¶ 33; Pl. SMF ¶ 33.

Officer Campisano and Officer Hogan left the scene. *Id.*

B. Procedural History

On December 20, 2021, Plaintiff filed the Complaint. Compl.

On May 19, 2022, Defendants filed an Answer with Affirmative Defenses. Answer, ECF No. 26 (May 19, 2022).

On October 18, 2023, Defendants moved for summary judgment. Mot.; Mem. of L. in Supp. of Mot. for Summ. J., ECF No. 36-1 (Oct. 18, 2023) ("Mem.").

On December 28, 2023, Plaintiff filed a memorandum in opposition to the motion for summary judgment. Pl.'s Mem. in Opp'n to Defs.' Summ. J., ECF No. 41 (Dec. 28, 2023) ("Opp'n").

On February 12, 2024, Defendants filed a reply to the response to the motion for summary judgment. Reply in Further Supp. of Mot. for Summ. J., ECF No. 46 (Feb. 12, 2024) ("Reply").

II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of

material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the

party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict[.]" *Anderson*, 477 U.S. at 250.

## III.  DISCUSSION

Ms. Capolupo Brooks has brought both federal law claims, alleging constitutional violations under Section 1983, and state law claims, alleging negligent infliction of emotional distress and negligence. Compl.

Defendants have moved for summary judgment on all four of Plaintiff's claims. Mot. at 1. They argue that: (1) Ms. Capolupo Brooks cannot establish that a constitutional violation occurred; (2) her equal protection, substantive due process, and *Monell* claims fail as a matter of law; (3) the individual Defendants are entitled to qualified immunity on all federal claims; and (4) the individual Defendants are entitled to governmental immunity on all state law claims. *Id.* at 1–2.

In response, Ms. Capolupo Brooks has abandoned her Section 1983 claims. Opp'n at 1 ("After a review of the relevant case law the plaintiff abandons her claims asserted in counts one and two.").

Because Ms. Capolupo Brooks has conceded her federal claims, the Court need not address Defendants' arguments regarding those claims. The Court therefore addresses only her remaining state law negligence claims.

Although the parties have submitted briefing on the merits of Ms. Capolupo Brooks's

negligence claims, *see* Opp'n at 7–14; Reply at 2–10, because no federal claims remain, the Court must first consider whether exercising supplemental jurisdiction over these claims is appropriate.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). The exercise of supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* Yet, as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (citation omitted). Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

9

The Court is mindful that values of judicial economy and convenience may weigh in favor of retaining pendent state law claims where extensive litigation has already occurred in federal court. *See, e.g.*, *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (finding that the magistrate judge had "acted well within his discretion in exercising supplemental jurisdiction" over the state causes of action, given that he had presided over the case for over a year, including ruling on a dispositive motion, and that the federal claim was not dismissed until nine days before trial); *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (affirming the trial court's determination that the "unique circumstances of this case," including "the completion of discovery, the determination of the third dispositive motion in this case, and the readiness of the case for trial, all favored retaining jurisdiction").

In this case, although discovery has concluded, Defendants' motion for summary judgment was the first motion filed on the docket. Moreover, there is no trial date currently scheduled. Given this Court's limited involvement in this case thus far, considerations of judicial economy and convenience therefore do not favor litigating Plaintiff's claims in federal court.

Most importantly, Ms. Capolupo Brooks's remaining claims raise quintessential questions of state law, regarding the viability of her negligence claims. The parties' filings engage with complex questions of governmental immunity, which depend on the ministerial or discretionary nature of Defendants' challenged actions and the applicability of the identifiable person/imminent harm exception. *See* 28 U.S.C. § 1367(c)(1) (authorizing district courts to decline to exercise supplemental jurisdiction where a claim "raises a novel or complex issue of state law"). Given the specific facts and circumstances of this case, litigating these issues in state court "will procure for the parties 'a surer-footed reading of applicable law'" with respect to these claims. *Klein & Co. Futures v. Bd. of Trade of N.Y.C.*, 464 F.3d 255, 263 n.5 (2d Cir. 2006) (quoting *Gibbs*, 383 U.S. at 726).

Accordingly, the Court will decline to exercise supplemental jurisdiction over Ms. Capolupo Brooks's remaining claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part.**

Summary judgment is granted on Counts One and Two, Plaintiff's Section 1983 claims. The Court dismisses Counts Three and Four, the state law negligence claims, without prejudice to their refiling in state court.

The Clerk of Court is respectfully directed to enter Judgment in favor of Defendants on Counts One and Two, to dismiss Counts Three and Four without prejudice, and to close this case.

SO ORDERED at New Haven, Connecticut, this 10th day of May, 2024.

> */s/ Victor A. Bolden*
> VICTOR A. BOLDEN
> UNITED STATES DISTRICT JUDGE